**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Preston ROSENBARGER, Jr.,
Defendant-Appellant.**

No. 75–1821.

United States Court of Appeals,
Sixth Circuit.

Submitted Feb. 5, 1976.

Decided June 23, 1976.

Joseph G. Glass, Louisville, Ky., for defendant-appellant.

George J. Long, U. S. Atty., James H. Barr, Louisville, Ky., for plaintiff-appellee.

Before WEICK, CELEBREZZE and LIVELY, Circuit Judges.

WEICK, Circuit Judge.

In a three-count indictment the defendant-appellant Rosenbarger was charged with receiving and possessing firearms after having been convicted of a felony, in violation of 18 U.S.C.App. § 1202(a)(1). His motion to suppress was denied and he was found guilty by the District Court on a written stipulation of facts. He was sentenced to eighteen months' imprisonment on each count of the indictment; the sentences on Counts 1 and 2 were to be served concurrently; the sentence on Count 3 was to be served following the sentences on the other two counts; the length of the sentences imposed by the District Court was three years. Rosenbarger is free on bond pending the resolution of his appeal.

In his appeal Rosenbarger contends that § 1202(a)(1) is unconstitutional and that the District Court erred in denying his motion to suppress evidence. In addition, by order

of this Court the parties were directed to submit briefs on the issues of the propriety of charging three separate violations of § 1202(a)(1) under the facts of this case, and of the permissibility of imposing consecutive sentences even if prosecution on three separate charges were permissible.

## I

■ Rosenbarger's challenge to the constitutionality of 18 U.S.C.App. § 1202(a)(1) is without merit. *United States v. Day,* 476 F.2d 562 (6th Cir. 1973). *See United States v. Bass,* 404 U.S. 336, 350–51, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); *United States v. Bush,* 500 F.2d 19 (6th Cir. 1974); *United States v. Brown,* 472 F.2d 1181 (6th Cir. 1973). In his stipulation of facts to the District Court [1] Rosenbarger "acknowledge[d] that the firearms had previously traveled in interstate commerce as they had not been manufactured in Kentucky." Despite his concern with what he regards as an unprecedented extension of federal power, we have previously held that such a nexus with interstate commerce is sufficient to establish a crime punishable by Congress. *United States v. Day, supra,* at 569.

We decline to depart from that position. We hold that 18 U.S.C.App. § 1202(a)(1) in the factual context of this case is constitutional.

## II

Rosenbarger was charged in the indictment with possession of three guns found during a search of his home. A warrant for that search had been issued by a Judge of the Police Court in Louisville, Kentucky. The warrant was based on an affidavit executed by Detective Ken Mooney of the Louisville Police Department. In his affidavit Detective Mooney recounted information that he had received from Detective Glen Wood of Bowling Green, Kentucky. According to Mooney's affidavit, on January 6, 1975 Wood had received from Joann Martin a written statement which stated that she and her husband sold to Rosenbarger certain stolen goods on December 18, 1974.[2] In his affidavit Mooney stated that there was probable cause to believe that stolen property and property used as the means of committing a crime were in the Rosenbarger home. The following items were described in the warrant as the items to be seized pursuant to the search:

> One 12 Ga. Double Barrell [sic] Ithaca shot gun, One 22 Magnum Rifle Brand Mossberg, One homelite chain saw, Assorted hand guns various makes and calibers. Marijuana and/or Narcotics or Dangerous Drugs.

The affidavit of Detective Mooney also recited that the above items were verified as stolen, by Detective Wood from theft reports on file in Bowling Green, Kentucky Police Department.

Joann Martin's (the informant) written statement of January 6, 1975 [3] to Detective Wood stated that she and her husband had come to Louisville and had sold three guns and a saw to a man named Johnny Rosen-

---

1. Rosenbarger does not challenge the accuracy nor the voluntariness of this stipulation.

2. In pertinent part Mooney's affidavit provided:
 On the 8th day of January, 1975, at approximately 1600 p.m., affiant received information from a law enforcement officer Detective Glen Wood, Commonwealth Investigator, Bowling Green, Kentucky, who states that an informant, Jo Ann Martin, W/F 28, 2229 Sunset Drive, Paducah, Kentucky on 1–6–75 gave him a written statement that on 12–18–74 around 1200 noon, she, along with Leland Martin, W/M 34, went to Rosie's Tavern, 742 E. Market Street, Louisville, Kentucky, where they made contact with one John Preston Rosenbarger, W/M 38. From this loca-

tion they were taken to 107 Stevenson, Louisville, Ky. When they arrived they sold the before mentioned items in this warrant to John Rosenbarger. Rosenbarger paid Leland Martin $50.00 in cash, and also wrote him a check for $50.00 on the stockyard Bank, Louisville, Ky., for the purchase of the stolen articles. Det. Wood states that the above mentioned informant also states that Rosenbarger deals in weed (marijuana) and other narcotics and drugs.

3. The statement of Joann Martin is dated January 6, 1974; however, it is clear from the transcript of the hearing on the motion to suppress that the statement was made on January 6, 1975.

berg. Her statement described the stolen items sold in Louisville as follows:

1. Power saw yellow—with the name McCullen [sic] 250 on it. 1. Color TV 21 in. Console with leg that screw off legs.[4] Three Shot Guns I think they were a 12 Gage [sic], 16 Gage I don't remember the other one.

Detective Mooney was not provided with a copy of Joann Martin's statement prior to his execution of the affidavit in support of the warrant.

The search warrant was issued and executed on January 8, 1975; Rosenbarger was not at home at the time the warrant was executed. The officers found a Titan .25 caliber semi-automatic pistol, a Hawes .357 Derringer, a .45 caliber Commando Mark III semi-automatic rifle, a McCulloch chain saw, and some pills described as positive amphetamines.

■ We conclude that there was probable cause for the issuance of the warrant to search Rosenbarger's home. The affidavit in support of the warrant contained information from an identified informant implicating herself in criminal activity. Such a declaration against penal interest carries its own indicia of reliability. *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

■ In addition, the statements of Joann Martin were verified by independent police action consisting of an examination of theft reports to the police from those locations at which Martin stated the robberies took place. We are of the opinion that the failure to specify in the search warrant the serial numbers of the stolen guns is not fatal to a showing of probable cause. *See Quigg v. Estelle,* 492 F.2d 343 (9th Cir.), *cert. denied,* 419 U.S. 848, 95 S.Ct. 86, 42 L.Ed.2d 78 (1974). Further the error in the

affidavit as to the brand name of the saw was harmless.[5]

■ The use by the police of their knowledge of Louisville affairs in concluding that the "Johnny Rosenberg" described by Joann Martin was in reality Johnny Rosenbarger, does not invalidate the search warrant. The information as to Rosenbarger's reputation, which information led the police to identify Rosenbarger from the description of one "Johnny Rosenberg," ideally should have been stated in the affidavit for the warrant; however, we decline to invalidate the search warrant on the basis of this minor failure relating to the proper spelling of a name.

■ Appellant contends that the time lapse between Joann Martin's observation of the illegal activity on December 18, 1974 and the issuance of the warrant on January 8, 1975 is fatal to the validity of the search warrant. The assertion is that the information was too stale to serve as the basis for a finding of probable cause. First, we note that great deference is due to a determination of probable cause made by a judicial officer. *United States v. Olt,* 492 F.2d 910, 912 (6th Cir. 1974); *Irby v. United States,* 114 U.S.App.D.C. 246, 314 F.2d 251, 253, *cert. denied,* 374 U.S. 842, 83 S.Ct. 1900, 10 L.Ed.2d 1064 (1963).

■ Although it is clear that probable cause existing at some time in the past will not suffice for the issuance of a search warrant, circumstances may be established from which it may be inferred that grounds for the search continued to the time the affidavit was filed. *See Sgro v. United States,* 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932).

■ We conclude that under the facts of this case an inference that the stolen

---

4. The television set was not sold to Rosenberg, but to another party in Louisville according to the statement of Joann Martin. Prior to issuance of the search warrant the television had been recovered by Detective Wood. According to his testimony at the hearing on the motion to suppress, the recovery of the television led him to believe that the rest of her statement was true.

5. A McCulloch brand chain saw was found in Rosenbarger's home, and Martin's written statement specified that a "McCullen" chain saw was sold to Rosenberg. However, the warrant and the affidavit in support thereof stated that the brand of the chain saw was "Homelite".

property remained in the Rosenbarger home was proper. The assumption that stolen goods delivered to a particular place will be there a mere twenty-one days later is eminently reasonable. We conclude that the Police Judge could properly determine that there was reasonable probability that the goods remained in the Rosenbarger home. *See United States v. Rahn,* 511 F.2d 290 (10th Cir. 1975), *cert. denied,* 423 U.S. 825, 96 S.Ct. 41, 46 L.Ed.2d 42 (1976), (facts relied on for issuance of search warrant were nearly two years old; validity of warrant upheld); *United States v. Barfield,* 507 F.2d 53 (5th Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1684, 44 L.Ed.2d 105 (1975), (40-day interval between observation of stolen property on defendant's premises and issuance of warrant insufficient to invalidate the warrant). *But see United States v. Neal,* 500 F.2d 305 (10th Cir. 1974), (information as to incriminating evidence on premises to be searched was obtained three months prior to search).

 Appellant Rosenbarger raises one final issue with regard to the validity of the search warrant. Both the warrant and Detective Mooney's affidavit in support of that warrant specified that the scope of the search was to include "Assorted handguns various makes and calibers." However, Joann Martin's statement contained no indication that she had any knowledge as to the presence of handguns in Rosenbarger's home. At the hearing on the motion to suppress, Detective Mooney testified that he received the information from Detective Wood as to the presence of handguns and rifles on the premises, and that the infor-

mation regarding the handguns and rifles came from Joann Martin. Thus the inclusion of handguns in the affidavit and warrant was the result of using hearsay information furnished by Detective Wood.[6]

We are unwilling to overrule the determination of the magistrate who issued the search warrant, in the absence of proof that Mooney knowingly used a false statement with intent to deceive the court, or recklessly asserted a false statement necessary to establish probable cause. *United States v. Luna,* 525 F.2d 4 (6th Cir. 1975), *cert. denied,* 424 U.S. 965, 96 S.Ct. 1459, 47 L.Ed.2d 732, 1976. The following language from our opinion in *Luna* is instructive:

> . . . [W]e do not believe that good faith error in a carefully prepared search warrant affidavit should be held to require suppression of evidence even where the erroneous allegation was essential to establishment of probable cause. (*Luna, supra* at 9)

We apply that rule in the case at bar and hold that there is no basis for suppression of the weapons seized in the search of Rosenbarger's home.

### III

The consecutive sentences imposed by the District Court as a result of Rosenbarger's conviction on three separate counts of receiving and having in his possession a firearm in violation of § 1202(a)(1) presents squarely before us the issue of whether the Government may treat each weapon simultaneously possessed by a felon as a separate offense.[7] *See United States v. Burkhart,*

---

6. There is no question but that hearsay may serve as the basis for the issuance of a warrant. *Jones v. United States,* 362 U.S. 257, 269, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

7. The Government contends that Rosenbarger was convicted only of "receipt" of firearms in violation of § 1202(a)(1). This contention is based on the nexus with interstate commerce. It was stipulated by the defendant that the firearms had previously traveled in interstate commerce as they had not been manufactured in Kentucky. We have recently decided that a nexus sufficient to support a conviction for receipt of a firearm will also support a conviction for possession after receipt. *United States*

*v. Jones,* 533 F.2d 1387 (6th Cir. 1976, decided March 30, 1976). See *Barrett v. United States,* 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976, decided Jan. 13, 1976, 44 U.S.L.W. 4050). Thus the conclusion that the nature of the nexus with interstate commerce which was stipulated establishes that defendant was convicted only of receipt of the specified weapons, is unwarranted. The arrest warrant, the complaint, the indictment, the defendant's stipulation of facts, and the judgment and conviction order all indicate that the contemplated charge against Rosenbarger included possession of the weapons. Most significantly, the indictment

529 F.2d 168 (6th Cir. 1976, decided Jan. 29, 1976.)

■ We are of the opinion that only one offense is charged under the terms of § 1202(a)(1) regardless of the number of firearms involved, absent a showing that the firearms were stored or acquired at different times or places. This view is premised upon the notion that Congress, and not the Courts, should define the criminal activity which is sought to be punished. *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

■ Thus, when a statute is ambiguous as to the appropriate unit of prosecution, that ambiguity should be resolved in favor of lenity for the accused. *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). This assures that the particular criminal statute provides fair warning as to what is actually prohibited.

■ We have concluded that § 1202(a)(1) is ambiguous as to the appropriate unit of prosecution. It provides in pertinent part as follows:

(a) Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony,

. . . . . .

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,-000 or imprisoned for not more than two years, or both.

If Congress had desired to create a separate offense on the basis of each firearm possessed, this could have been easily written into the statute.[8]

We thus adopt the position expressed by the Seventh and Eighth Circuits in *United States v. Calhoun,* 510 F.2d 861, 869 (7th

Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975), and *United States v. Kinsley,* 518 F.2d 665 (8th Cir. 1975). *See McFarland v. Pickett,* 469 F.2d 1277 (7th Cir. 1972); *United States v. Carty,* 447 F.2d 964 (5th Cir. 1971); *Rayborn v. United States,* 234 F.2d 368 (6th Cir. 1956).

■ The Government attempts to justify the imposition of consecutive sentences by establishing that Rosenbarger was convicted of receipt of the guns and that therefore the following language from *United States v. Steeves,* 525 F.2d 33, 39 (8th Cir. 1975), controls:

. . . [I]f a convicted felon receives a firearm on one occasion and later receives another firearm on another occasion, he is guilty of two offenses assuming that prior to the respective receipts the two guns had moved in interstate commerce.

As noted *supra* in footnote 8, we reject the contention that Rosenbarger was convicted only of receipt of the firearms. Regardless, it was the Government's burden to establish separate offenses under the statute. Rosenbarger stipulated only the facts; he made no implicit or explicit stipulation as to the legal effect of those facts. To allow the Government on remand to submit additional proof as to the separate receipt of the weapons would violate the prohibition against double jeopardy contained in the Constitution. The Government had its opportunity to try the defendant for the offenses he committed, and it was able to establish only one violation of § 1202(a)(1) by virtue of defendant's possession of three firearms.

■ The Government maintains that Fed.R.Crim.P. 12 should be applied in this case. Rule 12 provides, *inter alia,* that if the defense of multiplicity is not raised prior to trial, it is waived. The argument that one waives his right to object to the

---

charged that Rosenbarger "did receive and have in his possession" the specified firearms.

**8.** See *Sanders v. United States,* 441 F.2d 412 (10th Cir.), *cert. denied,* 404 U.S. 846, 92 S.Ct. 147, 30 L.Ed.2d 82 (1971), in which the use of the article "a" in 26 U.S.C. § 5861(d) making it

unlawful to "receive or possess *a firearm* which is not registered to him in the National Firearms Registration and Transfer Record" [emphasis added], was held to render the unit of prosecution unambiguous.

imposition of multiple sentences by his failure to object to the multiplicitous nature of an indictment is a *non sequitur*. Rule 12 applies only to objections with regard to the error in the indictment itself; the effect of Rule 12 is that dismissal of a multiplicitous indictment is not required; however, if sentences are imposed on each count of that multiplicitous indictment the defendant is not forced to serve the erroneous sentence because of any waiver.

Rule 35 provides that in such a case the defendant may move that his sentence be corrected. *See* 1 Wright & Miller, Federal Practice and Procedure § 145 at 335–36.

Finally, we note that since the defect in the sentence is apparent from the record, it is proper for this Court to resolve the issue on direct appeal rather than to wait for defendant to file a Rule 35 motion as "[i]t is more appropriate, whenever possible, to correct errors reachable by the appeal rather than remit the parties to a new collateral proceeding." *Bartone v. United States*, 375 U.S. 52, 54, 84 S.Ct. 21, 23, 11 L.Ed.2d 11 (1963); 2 Wright & Miller, Federal Practice and Procedure § 583 at 563.

We affirm the judgment of conviction and sentence on Count 1 of the indictment. We vacate the judgments of conviction on Counts 2 and 3.