UNITED STATES of America, Plaintiff-Appellee,

v.

Billy Ray McCRARY, Defendant-Appellant.

No. 80-7049.

United States Court of Appeals, Fifth Circuit. Unit B

April 23, 1981.

On Rehearing Aug. 10, 1981.

J. Stephen Salter, Birmingham, Ala., for defendant-appellant.

J. R. Brooks, U. S. Atty., R. J. McLean, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before HILL and FRANK M. JOHNSON, Jr., Circuit Judges, and SCOTT,* District Judge.

CHARLES R. SCOTT, District Judge:

Appellant Billy Ray McCrary was charged in an 11-count indictment with federal firearms violations. Counts I and II charged violations of 18 U.S.C. § 922(h)(1), which makes it a crime for a convicted felon to receive any firearm that has moved in interstate commerce.[1] Counts III through XI charged violations of 18 U.S.C.App. § 1202(a)(1), which makes it a crime for a convicted felon to receive, possess, or transport any firearm that has moved in interstate commerce.[2]

---

* District Judge of the Middle District of Florida, sitting by designation.

1. 18 U.S.C. § 922(h)(1) provides in pertinent part:

(h) It shall be unlawful for any person—
(1) who is under indictment for, or who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;

\* \* \* \* \* \*

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

2. 18 U.S.C.App. § 1202(a)(1) provides in pertinent part:

(a) Any person who—
(1) has been convicted by a court of the United State or of a State or any political subdivision thereof of a felony, . . .

\* \* \* \* \* \*

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

The charges stemmed from the seizure on August 17, 1979, of 15 long-guns (i. e. rifles and shotguns) from a trailer where appellant resided with his wife, Joyce McCrary, and her two children by a prior marriage. The following sequence of events led to the seizure:

On May 7, 1979, Captain Keith Smith of the Scottsboro, Alabama Police Department executed a search warrant at appellant's trailer.[3] The warrant authorized him to search for and seize certain handguns. Three handguns were found, although they were not the particular ones being sought.[4] While in appellant's home, Smith observed several long-guns. He did not seize them, however, because possession of them was not a violation of state law and Smith was unaware that possession or receipt of the long-guns by a convicted felon constituted a federal violation.

On August 17, 1979, the day of a hearing arising out of the May 7th search. Smith obtained another warrant to search appellant's residence. This warrant authorized a search for certain controlled substances. The affidavit supporting the warrant set forth information supplied by a confidential informant who stated he was inside appellant's residence within the previous 72 hours and observed him counting large quantities of illicit drugs. The affidavit set forth that the informant had previously supplied reliable information. In addition to the search warrant, Smith obtained an arrest warrant for appellant on a charge of receiving and concealing a stolen van.

On the morning of August 17, Smith told Dwight Duke, the State District Attorney in Scottsboro, that he was going to obtain a warrant to search appellant's residence for drugs and asked for advice as to what he should do in the event he encountered the long-guns again. Duke contacted the United States Attorney for the Northern District of Alabama who informed him that possession of the long-guns would constitute a federal violation and that they should be seized. Duke relayed this information to Smith shortly before Smith left to execute the warrant. Smith contends that this was the first time he learned that possession or receipt of the long-guns by a convicted felon was a federal crime. To the contrary, appellant argues that Smith concocted the confidential informant and the drug story as a pretext to arrest appellant on the long-gun charges. Appellant claims that Smith carried a vendetta against him and had been out to "get" him for a long time.

On the afternoon of August 17, 1979, Smith, accompanied by deputies of the Jackson County Sheriff's Department, executed the search and arrest warrants. Although the search failed to turn up any illegal drugs, the officers observed and seized 15 long-guns.

Appellant raises four issues in this appeal from his conviction on Counts III through XI of the indictment.

## I.

Appellant's primary claim pertains to the propriety, or impropriety, of the trial judge's imposition of two consecutive two-year sentences of imprisonment. The judge sentenced appellant to two-years on Counts III through VII and to two years on Counts VIII through XI, the two terms to be served consecutive to one another.

It is appellant's contention that the trial court erred in imposing consecutive sentences for the reason that appellant was convicted of only one possession under 18 U.S.C.App. § 1202(a)(1). We agree.

Several circuits have dealt with the question of what constitutes an appropriate unit of prosecution under the federal firearms statutes. *See, e. g., United States v. Powers,* 572 F.2d 146 (8th Cir. 1978); *United States v. Rosenbarger,* 536 F.2d 715 (6th Cir. 1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977); *United*

---

3. The trailer was actually owned by appellant's wife.

4. Smith also observed and seized what was believed to be a quantity of illicit drugs which later proved to be caffeine.

*States v. Calhoun*, 510 F.2d 861 (7th Cir.), cert. denied, 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975). The question was resolved in this circuit in *United States v. Bullock*, 615 F.2d 1082 (5th Cir. 1980), where it was held that, given the proper circumstances, 18 U.S.C.App. § 1202(a)(1) permits the government to prosecute the possession or receipt of each of several firearms separately. Such circumstances were found to be present in *Bullock* and the consecutive sentences imposed by the trial court were affirmed.

In *Bullock*, defendant was charged in a five-count indictment with violations of 18 U.S.C.App. § 1202(a)(1). Each count charged possession and receipt of a separate weapon. Four of the weapons were seized from the defendant's residence and one weapon was seized from the defendant's pick-up truck. The trial court imposed two-year sentences of imprisonment, to run consecutively, on each of Counts I, II and III, as well as concurrent probation sentences on Counts IV and V.

On appeal, this Court interpreted 18 U.S.C.App. § 1202(a)(1) as permitting divisibility of a collection of weapons into separate prosecution units where it is shown that the firearms were stored or acquired at different times or places. 615 F.2d at 1084, *citing Rosenbarger*, 536 F.2d at 721. The panel concluded that the evidence established the weapons were received at different times or places, thereby supporting the imposition of consecutive sentences.

▬ Separate prosecution units under 18 U.S.C.App. § 1202(a)(1) can arise either from a showing of separate receipts or separate possessions. Separate receipts can be established by showing that the weapons were acquired at different times or places. Separate possessions can be established by showing either that the weapons were stored in different places or that the weapons were acquired at different times or places. In other words, a showing of separate receipts automatically establishes separate possessions. This is apparent from *United States v. Gilbert*, 573 F.2d 346 (5th Cir. 1978).

In *Gilbert*, the defendant was convicted of two counts of theft from interstate freight shipments and of two counts of possession of the goods stolen from those shipments, pursuant to 18 U.S.C. § 659. Only the possession counts are relevant to our determination in the instant case.[5] Count II charged possession of two galvanized steel coils that were in transit from Ohio to Tyler, Texas. Count IV charged possession of four galvanized steel coils that were being shipped from Michigan to Houston, Texas. The district court imposed consecutive seven-year sentences on each possession count. Defendant's motion for reduction of sentence, asserting that the consecutive sentences constituted multiple punishment for the same offense, was denied by the district court.

On appeal, this Court rejected the argument that, because the coils were seized from the defendant at the same time from the same truck, that only one possession occurred. The evidence showed that the coils were stolen from separate interstate shipments at different times. This gave rise to two separate and distinct possessions.

---

5. The trial court sentenced Gilbert to concurrent seven-year sentences on Counts I and II and to concurrent seven-year sentences on Counts III and IV. The two sets of concurrent sentences were to run consecutively. Following affirmance by this Court in *United States v. Gilbert*, 537 F.2d 118 (5th Cir. 1976), the United States Supreme Court granted certiorari and remanded the case for reconsideration based upon the Supreme Court decisions in *Solimine v. United States*, 429 U.S. 990, 97 S.Ct. 517, 50 L.Ed.2d 603 (1976), and *United States v. Gaddis*, 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976); *United States v. Gilbert*, 430 U.S. 902, 97 S.Ct. 1169, 51 L.Ed.2d 578 (1977).

*Solimine* held that convictions and concurrent sentences for theft as well as for receiving the stolen property are improper. *Gaddis* held that convictions for robbery and for receiving or possessing the robbery proceeds are improper. On remand, this Court vacated Gilbert's convictions on the theft counts, but again affirmed the consecutive sentences on the possession counts. *United States v. Gilbert*, 553 F.2d 990 (5th Cir. 1977).

In the case *sub judice*, neither separate receipts nor separate possessions were established. Turning first to the question of separate receipts, it has been noted that appellant was acquitted on the counts charging violations of 18 U.S.C. § 922(h)(1). As previously stated, an offense under that statute is limited to the *receipt* by a convicted felon of any firearm that has traveled through interstate commerce. Acquittal of these charges necessarily leads to the conclusion that the jury found the appellant did not receive the weapons within the meaning of 18 U.S.C. § 922(h)(1).

As to 18 U.S.C.App. § 1202(a)(1), it is true that this statute covers possession *and* receipt. Nevertheless, a review of the record reveals that, from the outset, it was presumed by everyone involved, the attorneys, the judge and the jurors, that Counts I and II (charging violations of 18 U.S.C. § 922(h)(1)) were limited to receipt and Counts III through XI (charging violations of 18 U.S.C.App. § 1202(a)(1)) were limited to possession. Thus, in opening argument, counsel for the government stated:

> The defendant ... is charged, basically, and I'm giving you a shorthand version, he's charged basically with *in two counts, receipt and the other counts, possession* of firearms.... (T. 25) (Emphasis added).

> \*　\*　\*　\*　\*　\*

> The first two counts of the indictment ... charged that he *received* these weapons in the Northern District of Alabama. The remaining counts charged that he *possessed* the weapons in the Northern District of Alabama, that is, Counts Three through Eleven. (T. 28) (Emphasis added).

That the jury adopted this view of the charges is evident from the verdict:

> We, the jury find the defendant, Billy R. McCrary, guilty as charged in Counts Three through Eleven of the indictment, *excluding the receiving of these long-guns.* (T. 471) (Emphasis added).

In attempting to clarify the verdict, the trial judge commented:

> Now, what I understand from the jury is that this is intended to reflect a finding

that the defendant is guilty of Counts Three through Eleven; however, that's on the basis that each of those counts, although worded as being receiving and possessing, that in fact, the finding by the jury is that he *possessed* the particular weapon in the Northern District of Alabama, *not that he received them* in the Northern District of Alabama. (T. 471). (Emphasis added).

■ It is clear then that the jury found that the prosecution had not proved that the appellant had received the weapons as charged, but did find that he possessed the weapons. The final question to be resolved is whether the evidence supports a finding of separate possessions sufficient to justify consecutive sentences.

As noted, separate possessions can be established by evidence showing either that the weapons were received at different times or places or showing that the weapons were stored in different places. The first aspect of this test has already been disposed of. Since the jury found that appellant was not guilty of receiving the weapons, it follows *a fortiori* that there was no finding that he received them at different times *or* places.

Neither do the facts establish that the weapons were stored in different places. It is true that some of the firearms were found in an outbuilding employed by appellant as a storage/laundry facility while the remaining weapons were discovered in the bedroom of the trailer. Those weapons found in the outbuilding were charged in Counts III, IV and V. The trial judge sentenced appellant to two years on Counts III through VII and to two years on Counts VIII through XI. Thus, it is obvious that the judge did not base the consecutive sentences upon the theory that separate storage established two separate possessions.·

Moreover, the facts would not support such a conclusion. The outbuilding was for all practical purposes a part of the residential dwelling. It would be untenable to contend that objects kept in different rooms of the same residence could constitute separate possessions. The fact that the outbuilding was physically separated from the ,

trailer should not change this result. The outbuilding constituted an integral part of the dwelling unit. It was constructed upon the same residential lot and was used for ordinary household purposes, i. e., as a storage and laundry room.

To summarize, consecutive sentences for violations of 18 U.S.C.App. § 1202(a)(1) can be justified only upon a showing of separate receipts or possessions. The jury expressly found that appellant had not received the weapons at issue. Furthermore, the facts failed to support a finding of separate possession in that the weapons were not separately received by appellant nor were they stored in different places.

## II.

Appellant challenges the admission at trial of statements allegedly made to Captain Smith during the course of the search of appellant's trailer. He contends alternatively that the statements were never made or, if they were made, they should have been suppressed due to the totality of circumstances under which they were obtained. The content of the statements was alleged to consist of a detailed explanation as to how and where appellant acquired each of several weapons found in the bedroom of appellant's trailer.

A common thread woven throughout appellant's argument is that Smith was an "arch-rival" who had been out to "get" appellant for a long time. Appellant maintains that this animosity led Smith to fabricate the statements. To support this contention, appellant relies upon the testimony of his wife who claimed she would have overheard any such conversation and upon the fact that appellant was a seasoned criminal who would never voluntarily confess to a crime.

Whether or not appellant made the statements to Smith is not a matter to be decided by this Court. Assessing the credibility of a witness in a non-bench trial is a function solely within the province of the jury. *Hoffa v. United States*, 385 U.S. 293, 87

S.Ct. 408, 17 L.Ed.2d 374 (1966); *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *United States ex rel. Darcy v. Handy*, 351 U.S. 454, 76 S.Ct. 965, 100 L.Ed. 1331 (1956). The trial judge properly instructed the jury that they must decide whether the statements were ever made and how much weight should be attached to them.

Appellant's argument that the statements should have been suppressed based upon the totality of the circumstances under which they were obtained raises a more difficult problem. Although most of the argument directed toward this issue is without merit, one point warrants discussion. Smith conceded at trial that he never informed appellant of the nature of the offense upon which the questioning leading to the incriminating statements was based, i. e., the long-gun charges.

Following the unsuccessful search for drugs and prior to executing the arrest warrant on the stolen van charge, Smith told appellant that he suspected him of "being involved in some crimes." Then Smith read the *Miranda*[6] warnings to appellant to which appellant replied, "Keith, I understand my rights." Smith then began questioning appellant about the long-guns. It was at this point that appellant made the statements at issue.

It is undisputed that a waiver of the right to remain silent and the right to counsel must be made knowingly, intelligently and voluntarily in order to be effective. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). It is difficult to discern how a waiver of these rights could be knowing, intelligent and voluntary where the suspect is totally unaware of the offense upon which the questioning is based.[7]

---

6. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

7. *See* 18 U.S.C. § 3501(b) which provides that one of the factors to be taken into account in

determining the voluntariness of a confession is "... whether such defendant knew the nature of the offense"; *see generally Comment*, 36 U.Chi.L.Rev. 413, 432 (1969).

A valid waiver of constitutional rights does not occur in a vacuum. a waiver of the right to counsel and right to remain silent occurs in response to a particular set of facts involving a particular offense. The *Miranda* warnings are given not solely to make the suspect aware of the privilege, but also of the consequences of foregoing the privilege.[8]

In *Schenk v. Ellsworth*, 293 F.Supp. 26 (D.Mont.1968), the district court granted defendant's application for a writ of habeas corpus on the ground that statements made to the county attorney during custodial interrogation were improperly admitted at trial because the defendant had not been informed that he was a suspect in the murder of his wife. This was so even though defendant had been given the *Miranda* warnings. The Court found that the county attorney's statement that he wanted to talk with defendant "in connection with the shooting incident of his wife" was insufficient to apprise the defendant that he was suspected of murder.[9]

The instant case presents a similar situation. Appellant knew he was suspected of "some crime," although he obviously did not know it involved the long-guns. The officers had a search warrant for drugs and an arrest warrant for buying and receiving a stolen van. The search was led by a man who had ignored the long-guns during a previous search of appellant's trailer. No attempt was made to seize the firearms until after appellant had made the incriminating statements.

Appellant had no reason to suspect that he was being questioned in regard to an offense involving the long-guns . Indeed, a reasonable person who is told that he is suspected of "some crime" by a man who minutes earlier had handed him a warrant authorizing a search for drugs would pre-

sume that the crime of which he is suspected involved drugs, not firearms.

The government cites *Collins v. Brierly*, 492 F.2d 735 (3d Cir.), *cert. denied*, 419 U.S. 877, 95 S.Ct. 140, 42 L.Ed.2d 116 (1974), for the proposition that law enforcement officers are not required to inform a suspect of the nature of the offense prior to custodial interrogation. The case stands for no such principle. The court held only that a written waiver form executed by the defendant was not rendered a nullity by virtue of the fact that the defendant was not apprised of the nature of the investigation prior to signing the form. The court stressed, however, that the defendant had in fact been advised of the offense being investigated prior to any actual interrogation.

The holding was based upon the court's notion that:

> . . . [A] 'waiver' in its usual sense does not occur until a witness actually answers a question. Only when he takes such an affirmative action does the waiver occur. Anything preceding that step is but a freely revocable statement of intent.

*Id.* at 739.

In effect, the court concluded that signing the waiver form did not constitute an actual waiver of any rights because the form is merely preliminary in nature. The form's "main purpose is evidentiary, to establish with a minimum of difficulty and a maximum of certainty that the police gave the warnings and that the suspect had agreed—preliminarily—to answer questions." *Id.*[10]

Apparently, the reasoning adopted by the Third Circuit was that it is sufficient that a suspect is advised of the nature of the offense prior to questioning, although subsequent to execution of a waiver form, because no actual waiver occurs until he answers the first question. Without accepting the wisdom of this reasoning, suffice it to

---

8. *Johnson v. New Jersey*, 384 U.S. 719, 729–30, 86 S.Ct. 1772, 1778–79, 16 L.Ed. 882 (1966).

9. "Certainly it stands to reason that a suspect cannot intelligently make the decision as to whether he wants counsel if knowledge of the crime suspected is withheld from him. This

knowledge is a necessity to the free exercise of the right to counsel." 293 F.Supp. at 29.

10. In the instant case, Smith testified that the Scottsboro Police Department uses a waiver form, but that he did not bring one with him on the day of the search because ". . . it would be

330

say that *Collins* supports, rather than rebuts, the principle that a suspect should be advised of the nature of the offense being investigated prior to custodial interrogation.[11]

Nevertheless, it is unnecessary in the instant case to explore the precise parameters of this issue for we find that admission of the statements at trial constituted harmless error. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, *rehearing denied*, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967). Appellant was acquitted of all charges of receiving the long-guns. He was convicted only of possession. Twice the jury returned to ask for additional instructions on constructive possession. There was ample evidence to support a conviction on this ground, i. e., ample evidence that appellant had both the power and the intention at a particular point in time to exercise dominion and control over the weapons. It is likely that, had the jury believed the statements were made and attached any weight to them at all, appellant would have been convicted of receiving the long-guns as well as of possessing them.

Appellant concedes, even argues, this point in his brief:

Appellant had unsuccessfully attacked the voluntariness and admissibility of his alleged confessory statement. Yet the jury ultimately vindicated his position that the had *not* made such a statement. If they had believed the confession, they would have had no alternative but to convict him on all eleven counts. Similarly, they would not have asked the trial court on two occasions to further explain constructive possession since his statement admitted actual possession. This verdict was particularly unusual in that it clearly demonstrates that they did not

believe he had even made those statements, issues of voluntariness aside. (Brief for Appellant at 14).

Because there was sufficient evidence independent of appellant's alleged statements to convict appellant for possession of the long-guns, we find that admission of the statements constituted harmless error.

### III.

Appellant attacks the validity of the August 17 search on the basis that the search warrant was executed in violation of Alabama law.

Title 15, § 5–1 of the Code of Alabama defines a search warrant as "an order in writing in the name of the state signed by a judge, or by a magistrate authorized by law to issue search warrants, *and directed to the sheriff or to any constable of the county*, commanding him to search . . . ." (Emphasis added). This requirement that a search warrant be directed to a county law enforcement officer is repeated in two other sections of the Alabama Code.

Appellant contends that it was Smith, a municipal officer, who executed the warrant and, hence, the execution was invalid pursuant to Alabama law. This argument is foreclosed by this Court's decision in *United States v. Martin*, 600 F.2d 1175 (5th Cir. 1979). In that case, an Alabama municipal police officer applied for and obtained a search warrant that was properly directed to "any lawful officer of said county and said state." Although the municipal officer initiated the investigation, he was accompanied on the search by two deputy sheriffs of the county wherein the search took place.

The court, acknowledging that the municipal officer possessed no independent authority to execute a search warrant, con-

---

very difficult to fold it up and stick it in your pocket when you'd take the note pad with you, or something."

11. We are in no way suggesting an appendage to the traditional *Miranda* warnings. Those warnings are well-established and mechanical in nature. Most ten year old children who are permitted to stay up late enough to watch police shows on television can probably recite them as well as any police officer. There is generally no question as to the sufficiency of

the warnings themselves. They are either given or they are not given.

However, the standards governing the effectiveness of a waiver of constitutional rights are not as rigid and mechanized as the standards regarding the mere giving of warnings. In the absence of a showing that a purported waiver is knowing, intelligent and voluntary, it is ineffective. *See* 492 F.2d at 741–42 (Adams, J., dissenting).

cluded that the presence and involvement of the deputy sheriffs rendered the execution valid. The court pointed to the Alabama statutory provision that specifies who is authorized to execute a search warrant:

> A search warrant may be executed by any one of the officers to whom it is directed, *but by no other person except in aid of such officer at his request, he being present and acting in its execution.*

*Ala.Code,* § 15–5–7 (1976) (Emphasis added). The degree of participation of the county law enforcement officers was found to be sufficient to legitimate the search effort.[12]

We have substantially the same situation in the instant case as existed in *Martin.* The warrant was properly directed to the Sheriff of Jackson County. The fact that Smith was the motivating force in obtaining the warrant is irrelevant. Smith was accompanied on the search by various members of the Jackson County Sheriff's Department who participated in the search in what was essentially a cooperative effort. As in *Martin,* the involvement of the deputy sheriffs was sufficient to legitimize the search.

### IV.

Appellant's final contention is that the evidence was insufficient to support the jury's verdict. We have already found that the evidence, even without consideration of the alleged statements made by appellant to Smith, was sufficient to support a conviction for possession of the firearms under a theory of constructive, if not actual, possession.

Accordingly, we AFFIRM the judgment of conviction for Counts III through XI. We VACATE the consecutive two-year sen-

tences imposed for Counts III through VII and for Counts VIII through XI, respectively,[13] and REMAND this cause to the district court for resentencing in accordance with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

### ON REHEARING

Appellee has petitioned for rehearing. The petition alternatively seeks modification of the court's opinion.

The holding in Part II of the opinion is limited to a determination that the introduction of the statements in question was harmless. The discussion of the peculiar circumstances under which appellant made the statements is not to be taken as a holding that failure to inform a suspect of the crime with which he is charged renders the suspect's waiver of his *Miranda* rights involuntary.

With these observations, the Petition for Rehearing is DENIED.

---

12. "We are simply not prepared to suppress the fruits of this search on the basis of such artificial technicalities as who called whom, who asked whom to go along, who rode in the first car and who was driving, who read the warrant to the appellees, who searched where, who found what, *et cetera.*" 600 F.2d at 1183.

13. The trial judge sentenced appellant in the following manner:

> I am going to, and do hereby now, having been found guilty by the jury of counts three through eleven, adjudge you guilty of those

offenses, and it is the further judgment that you be committed to the custody of the Attorney General of the United States or his authorized representative with respect to counts three, four, five, six and seven, for a period of two years.

And with respect to counts eight, nine, ten and eleven, for a period of two years, to run consecutive to the sentence imposed for counts three through seven, meaning a total sentence of four years in connection with this sentence.