The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

John Leroy SPRING, Defendant-Appellant.

No. 80CA1081.

Colorado Court of Appeals, Div. III.

Feb. 24, 1983.

Rehearing Denied April 7, 1983.

Certiorari Granted Oct. 31, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Susan P. Mele, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, State Public Defender, Margaret L. O'Leary, Deputy Public Defender, Denver, for defendant-appellant.

TURSI, Judge.

Appealing his conviction for first degree murder in the death of Donald Walker, defendant, John Spring, contends the trial court erred in denying his motion to suppress three separate statements made while in custody for an unrelated offense. We find error in the suppression rulings, and accordingly, we reverse and remand for new trial.

I

Federal Alcohol, Tobacco & Firearms (ATF) agents in Kansas City, Missouri, learned from an informant that Spring was selling stolen weapons and that he had been involved in the early February shooting of Donald Walker near Craig, Colorado. At ATF's request, this informant contacted Spring, and on March 22, 1979, recorded a phone conversation which arguably implicated Spring in Walker's death. Spring ultimately was arrested in Kansas City on March 30, 1979, by undercover ATF agents to whom he was selling stolen weapons.

Spring signed a formal waiver of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) with reference to the charges for which he was in ATF's custody, and the arresting agents questioned him about weapons transactions. Later in the interview, however, these same agents questioned him about the Colorado shooting. At no time was Spring informed that the agents already suspected him of murder in Walker's death, and he was not readvised of his rights when questioned in that regard.

■ Waivers of constitutional rights not only must be voluntary but must also be knowing, intelligent acts done with an awareness of the relevant circumstances and likely consequences. *Brady v. U.S.,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

■ An advisement of the privilege against self-incrimination and of right to counsel is sufficient if the accused fully knows the general nature of the crime involved. *People v. Weaver,* 179 Colo. 331, 500 P.2d 980 (1972). If knowledge of the crime is withheld, a suspect cannot intelligently make the decision as to whether he wants counsel. *Schenk v. Ellsworth,* 293 F.Supp. 26 (D.Montana 1968). Therefore, Spring's waiver of his rights to silence and the presence of counsel with regard to the weapons-related conduct did not operate as a waiver of those rights with regard to unrelated criminal conduct which had occurred some two months previously in Colorado. *See U.S. v. McCrary,* 643 F.2d 323 (5th Cir.1981).

■ The agents had a duty to inform Spring that he was a suspect, or to readvise him of his *Miranda* rights, before questioning him about the murder. *See McClain v.*

*People,* 178 Colo. 103, 495 P.2d 542 (1972). Because the agents failed to so advise, any waiver of rights in regard to questions designed to elicit information about Walker's death was not given knowingly or intelligently. *U.S. v. McCrary, supra.* Spring's responses are accordingly rendered inadmissible, and his conviction must be reversed.

## II

ATF forwarded the results of its March interrogation to the Colorado Bureau of Investigation, and CBI agents traveled to Missouri and obtained a written statement from Spring on May 26, 1979. The record is silent as to what other information was in CBI's possession to link Spring to the Walker homicide.

Defendant argues that, if the March 30 statement to the ATF is inadmissible, the statement obtained by the CBI on May 26 is "fruit of the poisonous tree," and must be suppressed. *See Wong Sun v. U.S.,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

 If the May 26 statement was obtained by means significantly distinguishable from that used in obtaining the March 30 statement so as to be purged of the primary taint arising from the March 30 questioning, the statement would be admissible. *People v. Founds,* 621 P.2d 325 (Colo. 1981). It is the People's burden to establish that the statement was not the product of Spring's prior incriminating statements. *People v. Lowe,* 200 Colo. 470, 616 P.2d 118 (Colo.1980). This burden was not met.

## III

The trial court also erred in admitting the statements Spring made to ATF agents on July 13, 1979. The agents came to Spring for the stated purpose of "tying up loose ends" in the weapons case, to which by then he had pled guilty. Spring orally waived his *Miranda* rights and spoke freely with the agents. However, when the agents began asking about the homicide, Spring answered, "I'd rather not talk about that." The agents shifted the interview to other topics, but returned again to the homicide.

This process was repeated until the agents obtained an incriminating response.

 A waiver of *Miranda* rights must be established by clear and convincing evidence based on all circumstances, including details of the interrogation and defendant's conduct. While Spring waived his rights to silence and counsel as to the weapons charges, he did invoke his right to silence as to the homicide. *People v. Lowe, supra.* Officers who meet with a refusal to make any statement during an attempted in-custody interrogation are not permitted periodically to repeat the procedure until the accused finally makes a statement. *Dyett v. People,* 177 Colo. 370, 494 P.2d 94 (1972). Further, we hold that Spring was entitled to renewed *Miranda* warnings when the agents began to question him on crimes unrelated to the stated purpose for their inquiry. *U.S. v. McCrary, supra; McClain v. People, supra.*

The judgment of conviction is reversed and the cause is remanded for new trial, with directions that if the People seek the introduction of the May 26 statement on retrial, the trial court must first resolve the issue of attenuation from the tainted statement of March 30.

KIRSHBAUM, J., concurs.

VAN CISE, J., dissents.

VAN CISE, Judge, dissenting:

I respectfully dissent. In my opinion, the statements made by the defendant on each of the three occasions were voluntary and he was adequately advised each time.

As for the first statement made on March 30 to ATF agents, subsequent to the defendant's arrest that day for illegal possession and sale of stolen firearms, defendant was twice advised of his rights before questioning. He indicated that he understood his rights, signed a written acknowledgment and waiver, and, as found by the court, responded "freely, voluntarily, and intelligently" to the questions asked.

The defendant's arrest related to his possession and sale of certain stolen firearms,

one of which he had obtained from the murder victim, Walker. Another possible, related charge, was the violation of the federal law prohibiting prior convicted felons from possessing firearms. Therefore, the defendant's prior criminal record and use of guns, as well as the source of the stolen guns found in the defendant's possession that day, were clearly reasonable, foreseeable subject matters of questioning.

In order to validate a waiver by a defendant of his *Miranda* rights as knowingly, intelligently, and voluntarily made, the defendant, after the *Miranda* warning, need not be informed of specific charges which may be brought against him. *People v. Herrera,* 633 P.2d 1091 (Colo.App.1981), citing *People v. Casey,* 185 Colo. 58, 521 P.2d 1250 (1974) and *People v. Weaver,* 179 Colo. 331, 500 P.2d 980 (1972).

Here, the defendant was fully aware that his activities surrounding possession and sale of stolen firearms were the basis for his arrest and the agents' investigation. Questions regarding the source and the use of the .22 pistol found on him that day were foreseeable, and the defendant's *Miranda* waiver was valid and proper. Thus, the trial court properly refused to suppress the March 30 statement in which the defendant denied his presence and involvement in the Walker shooting.

The two subsequent statements were made almost two months and three and one-half months, respectively, *after* the first statement. The second statement, on May 26, was made under unique circumstances to Colorado law enforcement officials Konkel and Curtis, who had travelled to the Kansas City jail to interview the defendant. Kansas City jail personnel told the defendant that Colorado authorities were there to see him and asked him if he wished to speak with them. The defendant agreed to the visit, told Curtis he wanted to get it off his chest and that he wanted to talk with them. The interview-visit was conducted in the jail day room, containing some desks and vending machines. The defendant was fully advised of his *Miranda* rights and, again, signed an acknowledg-ment and waiver form. The defendant then reviewed a summary of his oral statement, written by Konkel, corrected the statement, initialed the corrections and signed it.

The third statement, on July 13, was made to federal agents after defendant had been convicted of the firearms violations. He was readvised, at which point he said, "I understand my rights but I won't sign anything without my lawyer." The agents got up and started to leave. The defendant then told the agents, "I won't sign any forms without a lawyer, but I'll talk to you." The defendant then told the officers how he obtained the stolen .22 pistol and about the Walker killing.

The trial court correctly found that all of these statements were voluntary, and were made after a knowing and intelligent waiver. There was no error in admitting them.

Since the other contentions for reversal are without merit, the conviction should be affirmed.