**UNITED STATES of America,
Plaintiff,**

v.

**Richard L. FIKES, Defendant.**

**Crim. No. 4–80963.**

United States District Court,
E. D. Michigan, S. D.

March 14, 1974.

Gordon S. Gold, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Martin Reisig, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

JAMES HARVEY, District Judge.

The case was tried on March 7, 1974, by the Court. Defendant was charged under 18 Appendix U.S.C. 1202(a) with being a felon who received a gun "in commerce or affecting commerce". The indictment originally charged defendant with possessing and transporting under that statute. However, the latter charges were dropped upon a stipulation to that effect by counsel prior to trial. Thus, the government went on to attempt to prove receipt only.

At the close of proofs, the defense counsel made this Motion for Judgment of Acquittal based on the lack of "interstate nexus" between the receipt of the shotgun and the interstate shipment of that particular gun. Time was granted to counsel to submit briefs on the question. Defense counsel submitted his brief shortly thereafter, raising an additional issue: That a "receiving" had not been shown by the government. The government has responded to both issues in its reply brief.

The government introduced testimony and exhibits at the time of trial which prove that the shotgun—the subject of the indictment herein—was manufactured in New York, that it was sent to a distributor in Indianapolis, Indiana, and that it was subsequently sent to the Neuman Gun Shop in Detroit, arriving on June 14, 1971. On September 21, 1972, the gun was sold to Marion Robinson, a resident of the state of Michigan. Mr. Robinson testified that he intended to use the gun to hunt with, although he did not in fact use the gun for that purpose. The gun was stored in a closet in Mr. Robinson's house. Defendant lived next door to Robinson, and the two were close friends, so that defendant came and went from Mr. Robinson's home freely. Defendant knew of the shotgun. On November 14, 1972, defendant used it to kill his brother, Samuel.

Defendant does not dispute that the shotgun passed through interstate commerce approximately 14 months prior to the time that it was in the possession of the defendant. Rather, defendant argues that the government's showing of a "nexus with interstate commerce" as required by the case of United States v. Bass, 404 U.S. 336, 92 S. Ct. 515, 30 L.Ed.2d 488 (1971), requires a greater showing than merely that the gun had traveled from outside of Michigan into this state at some time prior to the defendant's receipt.

*Bass* is somewhat vague about the burden upon the government to show the interstate commerce nexus. It states:

"Having concluded that the commerce requirement of Section 1202(a) must be read as part of the 'possesses' and 'receives' offenses we add a final word about the nexus with interstate commerce which must be shown in individual cases. The government can obviously meet its burden in a variety of ways. We note only some of these. For example, a person 'possesses . . . in commerce or affecting commerce' if at the time of the offense the gun was moving interstate or on an interstate facility, or if the possession affects commerce. Significantly broader in reach, however, is the offense of 'receiving . . . in commerce or affecting commerce', for we conclude that the Government meets its burden here if it demonstrates that the firearm received has previously travelled in interstate commerce."

Defendant, after noting that this language is that of only 4 Justices, and therefor dictum, argues that it is absurd to say that the government proves the interstate nexus *merely* by showing that the firearm traveled in interstate com-

merce. Concludes defendant, if such is the rule, it precludes him from showing that his *present* receipt of the weapon is "in commerce or affecting commerce." Defendant would prefer the *Bass* case to be read less broadly, such that a defendant charged under the statute in question could show that at some point in time the interstate character of the firearm ceased, and that a subsequent possession of that firearm by a felon would not violate the statute. Cf., Schwachter v. United States, 237 F.2d 640 (CA 6 1956).

Defendant admits, however, that this circuit has established case law bearing on this issue. Thus, we need not concern ourselves with the fact that the relevant language in United States v. Bass, previously stated in this opinion, is dictum. In United States v. Brown, 472 F.2d 1181 (1973), the Sixth Circuit dealt with the same argument that defendant now raises:

> "On appeal, Brown contends that there was not sufficient nexus between his possession of the firearm and interstate commerce. He argues that the movement of the firearm in interstate commerce had ceased about nineteen months prior to the time he received and possessed it, and that it had initially been received and possessed by another person. He further contends that the statute only proscribes possession of the firearm while it is being moved in interstate commerce. We disagree." (p. 1182)

The Court went on to make the following relevant remarks with respect to a time lag between the interstate movement and the possession of the firearm:

> "The last three lines of the above quotation are particularly applicable here. The Government has met its burden because 'it demonstrates that the firearm received has *previously* travelled in interstate commerce.' The Court did not place any time limit on the previous movement; neither do we."

The Ninth Circuit has ruled similarly. In United States v. Giannoni, 472 F.2d 136 (1973), cert. denied April 16, 1973, 411 U.S. 935, 93 S.Ct. 1911, 36 L.Ed.2d 396, the facts indicated that the gun which provided the basis of the indictment in that case had passed through interstate commerce at least thirteen (13) years prior to its use by the defendant during a robbery. It was even possible that the interstate movement had taken place as far in the past as 1918. The defendant argued that the interstate commerce nexus was too "tenuous and strange." The Ninth Circuit, however, found that the statute places no time limitation upon when the interstate commerce nexus occurred.

The *Brown* case also points out that it is not necessary that the defendant be the *direct recipient* of the firearm after it has passed through interstate channels. See also, United States v. Day, 476 F.2d 562 (CA 6 1973). The government need not show, in fact, that the defendant even knew that the gun had been in interstate commerce. United States v. Mullins, 476 F.2d 664 (CA 4 1973); United States v. Lupino, 480 F.2d 720 (CA 8 1973). If defendant need not have this knowledge, it would seem to follow that it is irrelevant when the gun had passed through interstate commerce.

Therefore, it is apparent that the law in this circuit is that the government sustains its burden of proving the interstate commerce nexus in a case charging a violation of Section 1202(a)(1), Title 18 Appendix, United States Code, by showing that the defendant received a firearm that had previously traveled in interstate commerce, and that the time lag between the movement and the receipt is irrelevant. The Court finds that the government has in this case demonstrated beyond a reasonable doubt that the firearm in question in this indictment traveled through interstate commerce prior to its receipt by defendant. Thus, the government has shown the interstate commerce nexus as required by United States v. Bass, *supra*.

Defendant also contends that the government's proofs failed to establish a

"knowing receipt" on or about the date charged in the indictment. The basis of this contention is that while the government's proofs tend to show a "knowing possession" of the shotgun on November 14, 1972, they do not indicate a knowing receipt on or about that date, and that the two terms are not the same thing.

██ It is not necessary to dispute whether "receiving" and "possessing" are synonymous or not. Referring again to United States v. Brown, supra, the Sixth Circuit has stated:

" . . . as we pointed out in United States v. McCreary, 455 F.2d 647 (CA 6 1972), one could not very well possess a firearm without receiving it." Id., at 1182.

Defendant has cited several cases which set forth a definition of "receive" or "receiving". What these definitions all say in common is that to "receive" something is to take it into possession and control. Thus, when an object is taken into possession and control, it has been received. In the present case, the government has shown that the defendant knowingly possessed the shotgun. To acquire such possession, defendant must have received the weapon, unless perhaps (and this is not the case here) he made it himself. Therefore, the government has shown a knowing receipt of the shotgun by the defendant.

██ A related issue remains to be solved, however. The government states that when the defendant had possession of the shotgun on November 14, 1972, he was simultaneously "in receipt" of the same firearm. Defendant does not agree, arguing that possession connotes a status, whereas receipt connotes an act. The definition of "receive" supports this argument; that is, once the receiving—the act of taking into possession and control of an object—is completed, the person then merely possesses or controls the object. Receipt, being an act, is completed upon the doing of the act. The status of possession then begins. Receipt and possession not being synonymous, proof by the government of possession on or about November 14, 1972, is not proof of receipt at that

time. Defendant concludes that the receipt of the gun not being proved to have occurred on or about November 14, 1972, the government's case must fall.

This Court does not believe that this distinction should affect the outcome of this case. We know that the defendant received the shotgun—whether from Marion Robinson or from defendant's brother is irrelevant—sometime between September 21, 1972, and November 14, 1972, a relatively short period of time. In fact, Mr. Robinson testified that he had cleaned the gun sometime after purchasing it on September 21, 1972. Thus, it is conceivable that defendant received the gun anywhere from one day to only a few weeks prior to his use of the gun on November 14, 1972. While the indictment charges that the receipt took place on or about November 14, 1972, the Court does not feel that the possibility that the receipt actually took place two to three weeks prior to that date fatally infects the indictment.

██ In Tafoya v. United States, 386 F.2d 537 (1967), the Tenth Circuit approved the following instruction to the jury:

"It was not necessary that the proof establish with certainty the exact date of the alleged offense. It is sufficient if the evidence shows beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged." Id., at 539. See, 27 F.R.D. 39, Jury Instructions and Forms 5.02 (1961).

It is not "necessary to prove that the offense was committed upon the day alleged, unless a particular day be made material by the statute creating the offense." Ledbetter v. United States, 170 U.S. 606, 612, 18 S.Ct. 774, 42 L.Ed. 1162 (1898). See also, United States v. Antonelli, 439 F.2d 1068 (CA 1, 1972), and cases cited therein. The statute in question here does not make a particular day material to the offense of receiving a firearm. Cf., United States v. Walker (CA 7, decided 11–28–73), 489 F.2d 1353, where the exact date of the receipt of the firearm was not relevant. There-

fore, the following statement from Ledbetter v. United States, *supra,* is relevant: "Ordinarily, proof of any day before the filing of the indictment, and within the statute of limitations will be sufficient." And "any day" should not be read to mean a specific day.

The Court finds that the government proved beyond a reasonable doubt that the defendant received the shotgun on a date reasonably near the date alleged in the indictment; and since this is all that is required by the statute, it has proved this element of the crime charged in the indictment. The time alleged in the indictment is not ordinarily material, and defendant does not claim to have been prejudiced by the failure of the government to state the exact date upon which receipt of the gun was had. Van Dam v. United States, 23 F.2d 235, 239 (CA 6 1928). Nor has defendant shown that the date charged in the indictment is material in any other way.

Therefore, for the reasons stated above, the defendant's Motion for Judgment of Acquittal is denied.