UNITED STATES of America, Plaintiff,

v.

Larry L. AUSTIN, Defendant.

No. G 83–53 CR.

United States District Court,
W.D. Michigan, S.D.

Sept. 15, 1983.

Jeanine Nemesi LaVille, Asst. U.S. Atty., Grand Rapids, Mich., for plaintiff.

Theodore W. Swift, George Brookover, Scott L. Mandel, Foster, Swift, Collins & Coey, Lansing, Mich., for defendant.

## OPINION

ENSLEN, District Judge.

Defendant in this case is charged with one count of receipt of a firearm in violation of 18 U.S.C. § 922(h), and five counts of receipt and possession of firearms, in violation of 18 U.S.C.App. § 1202(a)(1). On August 1, 1983 his newly appointed attorneys filed several motions on Defendant's behalf, and a hearing was held on August 16. At that time, Defendant requested that

the Court first take up his motion for disclosure of grand jury transcripts, and after oral argument on that question the Court ordered the Government to produce the transcripts for *in camera* inspection. The hearing on the remainder of the motions was adjourned until September 20, 1983. The Court received the grand jury transcripts on August 29, and has reviewed them as well as the briefs on all of the pending motions. At this time, with the exception of a portion of Defendant's Motion to Suppress, those motions are ready for decision, and I address them in turn below. The unresolved issues on the Motion to Suppress will be addressed at the September 20 hearing.

## I. MOTION FOR DISCLOSURE OF GRAND JURY PROCEEDINGS AND/OR DISMISSAL OF THE INDICTMENT

In this motion filed pursuant to Federal Rule of Criminal Procedure 6(e)(3)(C)(ii), Defendant seeks pretrial disclosure of transcripts of the grand jury testimony of all witnesses the Government will or may call to testify; "summaries" and other documents which were introduced to the grand jury; and grand jury minutes containing exculpatory material or which pertain to the credibility of witnesses the Government may or will call. By his motion Defendant also sought to examine the record of the grand jury proceedings in order to ascertain whether the indictment was predicated on hearsay such as to make dismissal of the indictment appropriate. As noted above, the Court has reviewed the grand jury transcripts *in camera,* primarily with respect to this latter argument by Defendant.

*Disclosure for Trial Preparation Purposes*

■ Defendant argues that he needs to inspect the record of the grand jury proceedings in order to properly prepare for his defense. He suggests that transcripts of testimony before the grand jury and other material presented to the grand jury would be of assistance with regard to impeachment of witnesses, refreshing recollection

and testing credibility. However, the Defendant must show a "particularized need" for pretrial disclosure of grand jury transcripts. *United States v. Short,* 671 F.2d 178, 184 (CA 6 1982), *cert. den,* 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982).

> A general claim ... that disclosure of grand jury transcripts would reveal exculpatory evidence is not sufficient to satisfy the requirement of a showing of a particularized need. *Id.* at 187.

Pretrial disclosure of grand jury transcripts for the purposes of preparation for impeachment and for refreshing recollection of Government witnesses, has likewise been held not to constitute the requisite particularized need. *United States v. Bruton,* 647 F.2d 818 (CA 8 1981), *cert. den.,* 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981).

■ It should be noted that Defendant is not precluded from ever seeing the grand jury testimony of witnesses, since under the Jencks Act, 18 U.S.C. § 3500(b), and Federal Rule of Criminal Procedure 26.2(a), a defendant has the right to discover the statements of a witness after he or she testifies, to the extent the testimony relates to the subject of his or her testimony at trial. Such "statements" include grand jury transcripts or records. 18 U.S.C. § 3500(e)(3), Rule 26.2(f)(3). The Defendant is also protected by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which provides a post-trial remedy for any Government failure to disclose exculpatory material to the Defendant.

■ The cases cited by Defendant in support of his Motion for Pretrial Disclosure of Grand Jury Proceedings do not compel disclosure in this case. *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), involved motions for disclosure at the conclusion of the direct exam of each witness, and the Court required a showing of particularized need. *United States v. Mahoney,* 495 F.Supp. 1270 (E.D.Pa.1980) and *United States v. Zborowski,* 271 F.2d 661 (CA 2 1959) likewise did not involve requests for *pretrial* disclosure. In *United States v. Borelli,* 336 F.2d 376

(CA 2 1964), *cert. den.,* 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965), defendant moved for disclosure of grand jury testimony *after* an agent who had testified at the grand jury testified at trial. The Second Circuit held that at *that* time the lower court should have reviewed the agent's grand jury testimony with regard to any inconsistencies between the agent's description of the case, and the defendant's testimony.

Defendant has failed to show a sufficient particularized need for pretrial disclosure of the grand jury record. And my review of the short and unremarkable transcripts of the grand jury proceedings of April 12, 1983 and August 11, 1983 in this case, does not convince me that Defendant will suffer any abiding unfairness if he is not allowed to review the transcripts prior to trial. For these reasons I deny Defendant's Motion for Disclosure of Grand Jury Proceedings for pretrial preparation purposes. If at some time prior to trial Defendant is able to show a particularized need for such disclosure, the Court will entertain a renewal of the instant motion pursuant to Fed.R. Crim.P. 6(e)(3)(C)(i), which governs disclosure of grand jury testimony. *United States v. Short, supra,* 671 F.2d at 186. I note that under that rule the Court may direct disclosure of matters occurring before the grand jury "preliminarily to or in connection with a judicial proceeding." Pretrial disclosure of grand jury information is thus not necessarily precluded by the provisions of 18 U.S.C. § 3500(a). *See* Fed. R.Crim.P. 16(a)(3). *United States v. Algie,* 667 F.2d 569 (CA 6 1982), cited by the Government, is not dispositive on the pretrial disclosure issue since that case did not involve grand jury testimony.

### Use of Hearsay

Defendant speculates that because Agent Gates' affidavit for a search warrant was based on hearsay, the indictment was probably also obtained solely on the basis of hearsay. The court agreed to review the grand jury transcripts in order to determine whether hearsay was improperly used before the grand jury in this case, and if so, whether dismissal of the indictment was appropriate.

■■ It has long been established that an indictment may rest on hearsay, *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Short, supra,* 671 F.2d at 181, and the Defendant conceded this at oral argument. Defendant merely contends that the *misleading* use of hearsay should be grounds for dismissal. The Sixth Circuit has indicated that it would not reverse a conviction even if the grand jury were deceived by the use of hearsay. *United States v. Barone,* 584 F.2d 118 (CA 6 1978), *cert. den.,* 439 U.S. 1115, 99 S.Ct. 1019, 59 L.Ed.2d 73 (1979). However, I need not reach that issue, because my review of the grand jury transcripts reveals no misleading use of hearsay information. In fact, the grand jury witness in this case specifically stated that his report was based in part on information supplied by other people, and the distinction was clear from his testimony. Therefore, Defendant's motion on this ground is also denied.

## II. DEFENDANT'S MOTION TO DISMISS AND/OR MERGE THE COUNTS OF THE INDICTMENT

The indictment in this case charges Defendant with five separate counts of violating 18 U.S.C.App. § 1202(a), by having "received and possessed" a firearm, each of the five counts referring to a different gun. However, these five counts (2–6) encompass only two alleged dates of "receipt and possession." Counts 2 and 3 charge that Defendant received and possessed specified firearms "during October 11, 1982." Counts 4 through 6 charge receipt and possession "during March 23, 1983." (Count 1 charges receipt under 18 U.S.C. § 922(h)(1), during October or November 1982, but is not at issue on this motion.) Defendant argues that the indictment is multiplicitous and that Counts 2 through 6 should be merged into two counts in accordance with the two alleged dates. He also claims that the indictment is duplicitous, and in this

regard seeks an order requiring the Government to elect between charging receipt or charging possession. In the alternative, the Defendant urges the Court to dismiss the indictment with prejudice because of these claimed defects.

### Multiplicity

Defendant argues that since only two different dates are alleged in the indictment, the Government may only properly charge two crimes, because as presently framed the indictment is "multiplicitous". Defendant bases his argument on the holding in *United States v. Rosenbarger,* 536 F.2d 715, 721 (CA 6 1976), which states the general rule regarding multiplicity in the context of prosecutions under § 1202(a):

> . . . only one offense is charged under the terms of § 1202(a)(1) regardless of the number of firearms involved, absent a showing that the firearms were stored or acquired at different times or places.

The Government contends that regardless of the allegation of only two different dates in the indictment, it is entitled to introduce evidence to show separate dates of acquisition such as to support the separate counts.

"Multiplicity" is defined as the charging of a single offense in separate counts. *United States v. Hairrell,* 521 F.2d 1264, 1266 (CA 6 1975), *cert. den.,* 423 U.S. 1035, 96 S.Ct. 568, 46 L.Ed.2d 409 (1975). According to Professor Wright,

> The vice of multiplicity is that it may lead to multiple sentences for the same offense, though for this there are remedies, and that "the prolix pleading may have some psychological effect upon a jury by suggesting to it that defendant has committed not one but several crimes."

1 Wright *Federal Practice and Procedure: Criminal 2d,* § 142, pp. 475–476.

In *Rosenbarger, supra,* three guns were found during a search of defendant's home, and he was subsequently charged under a three count indictment for receiving and possessing firearms in violation of § 1202(a)(1). Defendant was given a consecutive sentence on two of the counts, and

he appealed. That case had been presented on the stipulated fact that defendant had received and possessed, and on appeal the Government argued that the separate convictions could be upheld because there were three receipts. The court noted that since the indictment charged both possession and receipt, the defendant had not necessarily been convicted solely upon the receipt aspect of the charges. 536 F.2d at 720, fn. 7. The court held that Defendant could only be convicted of one offense, since there was no showing that the guns had been stored or acquired at different times or places; the Government had the burden of proving separate offenses under the Act.

In *United States v. Killebrew,* 560 F.2d 729 (CA 6 1977), the Sixth Circuit again looked at the question of multiplicity under § 1202(a)(1). In that case the Court reversed and remanded defendant's conviction on Fourth Amendment grounds, but went on to discuss the question of multiplicity for the purpose of guiding the lower court in the event that defendant was retried. The court indicated that where there was evidence of separate acquisitions, a defendant could properly be convicted of two counts of possession of firearms even though the guns were possessed together:

> The condition precedent to prosecution and conviction on separate counts—evidence of separate acquisition—has been met on the facts of this case.

560 F.2d at 734.

The court cited *Rosenbarger* as authority for that *dictum.* The Government argues that, in light of this language in *Killebrew,* separate acquisitions need not be alleged in the indictment, as long as evidence is presented at trial to show such grounds for conviction on more than one charge. However, neither *Rosenbarger* nor *Killebrew* involved challenges to the indictment, making further consideration of the question necessary in this case.

In *United States v. Wiga,* 662 F.2d 1325 (CA 9 1981), *cert. den.,* 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982), the court held that defendant had been properly con-

victed on two counts of possession under § 1202(a) where the guns had been possessed and seized at the same time, but the indictment in that case had alleged separate and distinct acts of acquisition on different dates, and the evidence had supported the allegations of the indictment. On the other hand, courts have allowed convictions on separate counts to stand where there was a showing at trial that the guns were acquired at different times, without expressing any concern about the failure of the indictment to allege distinct times of receipt and possession. *E.g. United States v. Oliver,* 683 F.2d 224 (CA 7 1982); *United States v. Bullock,* 615 F.2d 1082 (CA 5 1980), *cert. den.,* 449 U.S. 957, 101 S.Ct. 367, 66 L.Ed.2d 223 (1980).

If Defendant in this case had failed to raise an objection at this stage, if the evidence at trial had clearly shown separate receipts of the various guns involved in the five counts of the indictment, and if it had been clear that any conviction was for the separate receipts rather than the single possession, Defendant's multiplicity argument might fail. However, Defendant has *not* waived his argument at this stage, and the Court must therefore address the sufficiency of the indictment to adequately apprise the Defendant of the separate charges which he must be prepared to meet. *See Russell v. United States,* 369 U.S. 749, 763–764, 82 S.Ct. 1038, 1046, 8 L.Ed.2d 240 (1962).

■ The indictment alleges both receipt and possession as to each gun, but clearly refers to only two different dates. The indictment does not indicate that these dates apply only to the alleged possession by the Defendant; rather, in each count, the date alleged refers to both receipt *and* possession. Thus, the indictment presents a different situation than that in which a time of receipt is not proved in accordance with a date alleged in an indictment. In such a case the failure to prove a date in accordance with the indictment has been held not to be fatal to the prosecution as long as the offense is shown to have occurred on a date reasonably near the date alleged, the date is not material, and there is no showing that the Defendant is prejudiced by the variance. *United States v. Fikes,* 373 F.Supp. 1052 (E.D.Mich.1974), *aff'd without op.,* 510 F.2d 973 (CA 6 1975). In *Fikes,* the concern was whether, as to one alleged occurrence, Defendant had been adequately apprised of the date of the offense. In the present case, the fact that only two dates are alleged clearly indicates to the Defendant that regardless of a variance of proof as to the specific date, only two separate occasions are involved. Under such circumstances, a defendant cannot be expected to have been apprised of the nature of five separate charges sufficiently to be able to prepare his defense. For this reason I am convinced that in this case, the indictment is multiplicitous. Counts 2 and 3 must be merged into one count, and Counts 4 through 6 must likewise be merged into one count.

### Duplicity

In addition to arguing that the indictment is multiplicitous, the Defendant urges the Court to find that each count is duplicitous, because the "receipt and possession" alleged in each count constitute two separate offenses. Again, this argument addresses only Counts 2 through 6.

■ A count of an indictment is duplicitous when it charges two or more separate offenses. *United States v. Robinson,* 651 F.2d 1188 (CA 6 1981), *cert. den.,* 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 182 (1981). Professor Moore offers three basic reasons for prohibiting duplicity: (1) to protect a defendant's rights to have proper notice of the nature of the accusation so that he may prepare his defense; (2) to insure that if convicted it will be clear from the verdict on what offense the conviction is based, so that the appropriate punishment may be imposed; and (3) to avoid confusion as to the basis of the verdict (which might subject the defendant to double jeopardy later) and to avoid prejudice from evidentiary rulings which may go to only one of two or more offenses charged in the count. 8 *Moore's Federal Practice* ¶ 8.03[1].

■ Moore cautions that on duplicity arguments the Court should be careful to distinguish between a count charging the commission of a single offense by more than one means, and charging separate and distinct offenses. "Although proof of only one such scheme is required to form the basis of a violation, the indictment may plead alternative schemes in the conjunctive." *Id*, ¶ 8.03[2]. The Sixth Circuit has clearly stated that it follows the rule in this regard:

> It is settled law that an offense may be charged conjunctively in an indictment where a statute denounces the offense disjunctively. . . . Upon the trial the government may prove and the judge may instruct in the disjunctive form used in the statute.

*United States v. Murph,* 707 F.2d 895, 896–897 (CA 6 1983). (Citation omitted.) *Accord, Fields v. United States,* 408 F.2d 885, 887 (CA 5 1969). I find that in this case, the indictment charges the commission of a single offense by different means, and thus is not duplicitous.

The Defendant observes that, in briefs filed previously in this case, the Government has contended that receipt and possession are separate and distinct acts which may be charged separately. However, neither party has ever cited to the Court, nor can I find, any cases in which it has been held that the Government may charge as separate counts both a receipt and a possession charge under § 1202(a) with regard to the same firearm. Clearly, the disjunctive nature of the statutory language prohibiting the "receipt, possession or transportation" contemplates that a defendant could be convicted under an indictment which charged only one of the three. But that does not mean that an allegation of all of them means that separate offenses have been charged. The case of *United States v. Fikes, supra,* is not to the contrary. In that case, the court found that the terms receipt and possession were not synonymous, and thus there was a question whether the Government had varied from its indictment on a "receipt" charge by proving possession on a certain date. The court held that since

it was clear from the facts surrounding the possession that the defendant could not have received the firearm more than three weeks prior to the proved date of possession, the variance was not fatal to the indictment. However, the court clearly did not decide whether the distinction between the meaning of receipt and possession was such as to constitute them separate offenses which could both be charged with regard to the same firearm.

*United States v. Larranaga,* 614 F.2d 239 (CA 10 1980) comes closer in approximating the issue presented here, holding that there was no double jeopardy where defendant was convicted of receipt under § 922(h)(1) and possession under § 1202(a) as to the same gun. However, that case did not address the question of receipt and possession charges where both are based on § 1202(a). Furthermore, other cases have held that even under §§ 922 and 1202, the defendant is not subject to prosecution under both statutes as to the same gun. *United States v. Larson,* 625 F.2d 67 (CA 5 1980); *United States v. Square,* 516 F.Supp. 28 (E.D.Va. 1981) (questioning *Larranaga* ).

In one firearms case the Government had apparently charged in the conjunctive under § 1202 and had been allowed to prove in the disjunctive. The Court of Appeals for the Eleventh Circuit held that this was proper, clearly considering receipt and possession simply as various means by which the statute might be violated. *United States v. Griffin,* 705 F.2d 434, 436 (1983). *See also United States v. Garrett,* 583 F.2d 1381, 1389–1390 (CA 5 1978), where the court likewise characterized "receipt" and "possession" as alternative ways an offense might be committed under § 1202(a).

While the inclusion of allegations as to both receipt and possession in the present indictment may require specific instructions on the point of disjunctive proof, the Government is not now required to elect between pursuing one or the other of those two means by which Defendant may have violated § 1202(a). Because I find that receipt and possession are simply two means

of violating the same provision, I find that Counts 2 through 6 (now merged into two counts) are not duplicitous, and therefore deny Defendant's motion in that regard.

## III. DEMAND FOR DISCOVERY AND INSPECTION

■ In an "Amended Demand for Discovery and Inspection" Defendant seeks disclosure of certain information prior to trial under nine separate requests. Only two of the nine requests appear to be really in dispute.

In its brief in opposition to the amended demand for discovery, the Government states that it does not object to providing the information sought in requests 1 through 6 and request number 8, and in fact asserts that it has complied with those requests. The Defendant, however, claims that the Government has failed to provide copies of the tape recording of Defendant's statement to Agent Gates, and copies of Gates' notes or records from which the statement was written. According to the Government, the Defendant's statement was not recorded. Thus it is only required to provide the Defendant the substance of any oral statement which it intends to offer in evidence at the trial made by the Defendant after arrest. Fed.R.Crim.P. 16(a)(1)(A). The Government is ordered to provide the Defendant with such information if it has not already done so. Defendant also asserts, with regard to requests 1 through 6, and 8, that the Government has failed to produce recorded testimony of the Defendant before the grand jury, or if there is no such testimony, to affirmatively so state. In its brief in opposition, the Government does state that Defendant did not testify before the grand jury.

### Request Number 9

■ In this request, Defendant seeks exculpatory material or material which may lead to exculpatory material. Defendant claims that he has not been given reports of the FBI, the Bureau of Alcohol, Tobacco and Firearms or Lansing Police investigations.

Defendant also says that he has not received a copy of Dryer's statement, but a copy is attached as an exhibit to one of the Government's briefs in this matter. The Government asserts that it knows of no exculpatory evidence to give the Defendant, and that *Brady* does not give the Defendant the right to inspect Government reports or witness statements which do not contain exculpatory evidence. Rule 16(a)(2) provides:

> *Information not subject to disclosure.* Except as provided in paragraphs (A), (B), and (D) of subdivision (a)(1), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses except as provided in 18 USC § 3500.

Therefore, aside from Defendant's own statement, his prior record, and reports of examinations and tests, Defendant is only entitled to this information at trial if it falls within the scope of 18 U.S.C. § 3500.

### Request Number 7

The Government has objected to portions of the Defendant's request number 7, which seeks information under four different subheadings. I address each category of information in turn.

*7(a) The names and addresses of all witnesses the United States intends to call at trial and the prior criminal records of such witnesses.*

The Government argues that the names and addresses of witnesses are not subject to disclosure prior to trial. It is correct insofar as it argues that Defendant is not *entitled* to such information under Rule 16. *E.g. United States v. Conder,* 423 F.2d 904 (CA 6 1970), *cert. den.,* 400 U.S. 958, 91 S.Ct. 357, 27 L.Ed.2d 267 (1970). However, the Court does have the discretion to order the prosecution to disclose its witnesses to Defendant. *United States v. Kendricks,*

623 F.2d 1165 (CA 6 1980). In *Kendricks* the Sixth Circuit held that the district court had not abused its discretion in denying defendant's motion to dismiss, where the Government produced a list of its witnesses on the morning of trial instead of 48 hours prior to trial as the court had ordered. In upholding the lower court's ruling, the Sixth Circuit noted that the case involved few witnesses, the identity of the witnesses was revealed by other discovery, and the prosecution's theory of the case was fairly straightforward.

██ It is unlikely that in the present case the Defendant will be surprised by the identity of witnesses which the Government intends to call. However, the Government has not indicated that its case would be prejudiced by pretrial disclosure of the identity of its witnesses, or that those witnesses would be somehow harmed by such disclosure. Therefore, the Court will order that the Government disclose to the Defendant the witnesses it intends to call at trial, no later than three working days prior to trial.

██ Rule 16 does not require that information regarding any criminal record of Government witnesses be disclosed to the Defendant. Defendant clearly seeks this information solely for its potential value as impeachment material at trial. In *United States v. Leightfuss*, 331 F.Supp. 723 (N.D. Ill.1971), cited by Defendant, the district court stated that it allowed pretrial disclosure of criminal records as a matter of course. *Id.* at 736. In *United States v. Munsey*, 457 F.Supp. 1 (E.D.Tenn.1978), on the other hand, the court rejected defendant's request for a list of the Government's proposed trial witnesses and disclosure of their criminal records, noting that there is no general constitutional right to discovery in a criminal case.

Here, because this request for information is beyond the scope of Rule 16, and because Defendant has not really demonstrated a need for the information at this time, pretrial disclosure of any criminal record of Government witnesses need not be made by the Government. However, the Defendant may move for disclosure of such information as necessary later in the course of this prosecution.

*7(b) All statements or summaries of statements made by any person with knowledge of facts which have or may have a relationship to this action, including that of Julie Dryer; and (1) the fact of all such statements; (2) whether the statements were recorded in any form; (3) the name and address of the individuals who made the statement; and (4) the date and place that the statement was made.*

██ Defendant is of course entitled to be advised of any exculpatory statements of which the Government has knowledge, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and has a right to his own statements, pursuant to Fed.R.Crim.P. 16(a)(1)(A). However, Defendant has no right to discover statements of witnesses until after the witness testifies at trial. Rule 16(a)(2); 18 U.S.C. § 3500(a). The Court cannot order an earlier disclosure of statements by such witnesses, since it would in effect be an amendment to the Jencks Act. *United States v. Algie*, 667 F.2d 569 (CA 6 1982). Defendant's request for information beyond the scope of these principles must be denied.

*7(c) All charts and summaries that the Government intends to introduce at trial and summaries of its expert witnesses expected testimony.*

The Government states that at the present it does not have any charts or summaries that it plans to use at trial, but that it will disclose such matter to Defendant "at the earliest opportunity" if they are later developed. The Government further states that at present it does not intend to call any expert witnesses, but that it will promptly notify the defense and provide such reports as required by Rule 16(a)(1)(D), if that plan changes. This response by the Government appears to comply in all respects with its obligations under the rules.

*7(d) The existence and terms of all understandings and/or agreements that the Government has entered into with any witnesses that it may call at trial and the names and addresses of all Government informants involved in this matter and the contents of their communications.*

■ The Government assumes that Defendant seeks information regarding promises of leniency in exchange for testimony, and I draw the same inference from this discovery request. Because disclosure of such information is not specifically governed by the rules of Federal Criminal Procedure, Defendant's right to the information is determined by what the Constitution requires in order for the Defendant to have a fair trial. In *Brady v. Maryland, supra,* the Supreme Court held that the Government cannot suppress evidence which is material to the question of guilt and favorable to the defendant, at least when there is a specific request for that information. Where credibility of a witness is critical to or determinative of the verdict of guilt or innocence, impeachment evidence which is suppressed by the Government may be of sufficient materiality to require a new trial. *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *United States v. McCrane,* 527 F.2d 906 (CA 3 1975), *vac. and remanded* 427 U.S. 909, 96 S.Ct. 3197, 49 L.Ed.2d 1202 *aff'd,* 547 F.2d 204 (1976). *Brady v. Maryland,* provides the defendant with essentially a post-trial remedy for Government suppression of information. Here, the Court cannot know at this time what effect the issue of credibility may have on the Defendant's case. In light of these considerations, and because the information is sought solely for the purpose of impeachment of witnesses at trial, the Court will deny this request for information, without prejudice to its renewal at a later time.

■ With regard to Defendant's request for the identity of informers, the Government states that no informant was an active participant in the offenses charged in this case. Since Defendant cannot show that the identity of an informant is essential to his case, disclosure is not required. *See Roviaro v. United States,* 353 U.S. 53, 60, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957).

## IV. MOTION FOR BILL OF PARTICULARS

■ In this motion, Defendant seeks information on seven specific points as to each count of the indictment. As the Sixth Circuit has stated,

> The purposes of a bill of particulars are to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague and indefinite for such purposes.

*United States v. Birmley,* 529 F.2d 103, 108 (CA 6 1976).

These specific purposes indicate that a bill of particulars is not appropriately invoked as a general discovery tool. *See United States v. Sanders,* 462 F.2d 122 (CA 6 1972); *United States v. Largent,* 545 F.2d 1039 (CA 6 1976), *cert. den.,* 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 546 (1977).

Each count of the indictment in this case refers specifically to the statute Defendant is alleged to have violated, describes the firearm involved in detail, and includes an allegation of an approximate date on which the offense was committed. The Court has already ordered that the charges stated in Counts 2 through 6 must be merged to form two counts, in order to avoid multiplicity problems and adequately apprise the Defendant of the offenses with which he is charged. It seems clear that given that adjustment, the indictment adequately informs the Defendant of the nature of the charges against him with sufficient precision to enable him to prepare for trial. Moreover, the Government has indicated that Defendant has had access to the Government's entire investigative file. Such full discovery may obviate the need for a bill of particulars. *See United States v. Giese,* 597 F.2d 1170 (CA 9 1979), *cert.*

*den.,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979); *United States v. Society of Independent Gasoline Marketers,* 624 F.2d 461 (CA 4 1979), *cert. den.,* 449 U.S. 1078, 101 S.Ct. 859, 66 L.Ed.2d 801 (1981). Nevertheless, I will review each of the seven requests for information.

*1. The name and address of the person(s) from whom Defendant allegedly received and possessed[1] the [firearm].*

The Court has already addressed Defendant's request for information on Government witnesses, in the context of Defendant's amended demand for discovery. In light of the Court's Order in that regard, and because Defendant has had access to the Government file in this case, it is unclear to the Court how Defendant could be in danger of surprise at the time of trial if this request is not granted. This request goes beyond the proper subject of inquiry on a motion for bill of particulars. *United States v. Sanders, supra; United States v. Largent, supra.*

*2. The date and place that Defendant received and possessed said [firearm].*

As to each count of the indictment now merged into three counts, an approximate date of the offense is given. One date is obviously the date Defendant allegedly sold firearms to a state police officer; the other is clearly the date of Defendant's arrest, when both his house and the house of Julie Dryer were searched. As to the date of receipt of the firearm in Count 1, it is noted that the Government need not allege the exact date upon which the firearm was received, as long as the date proved is reasonably close to the date alleged, and Defendant is not prejudiced by the variance. *See United States v. Fikes,* 373 F.Supp. 1052 (E.D.Mich.1974) *aff'd,* 510 F.2d 973 (1975).

With those limitations imposed upon the Government's proof at trial, it does not appear that Defendant has not been adequately apprised of the nature of the charge against him, or that the indictment is insufficient to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense. Nor does it appear that Defendant is in danger of surprise at the time of trial. If the Government does attempt to prove a date of receipt or possession substantially different from the date alleged in the indictment, the Government will not be able to obtain a conviction on that particular charge.

*3. The names and addresses of the persons present when Defendant allegedly received and/or possessed said [firearm].*

*4. The names and addresses of all the persons present during the happening of any overt acts on the part of the Defendant that constitute an alleged violation of said statute, including conversations.*

*See* the Court's discussion under 1, p. 237, above, and on Defendant's Amended Demand for Discovery. (Section III, p. 234, above.) To the extent Defendant seeks information beyond the scope of the discovery ordered by the Court, the request is denied.

*5. When and where said [firearm] was shipped and transported in interstate commerce and/or the manner that said Defendant received and possessed said [firearm] affected commerce, and the names and addresses of the person who shipped or transported said [firearm].*

Defendant asserts that because an interstate commerce nexus is an element of the offenses charged by the indictment, this information must be made available to him in order for him to properly prepare for trial. However, proof that a firearm was manufactured outside of the state is a sufficient basis for a finding that the alleged possession was in or affected commerce. *United States v. Jones,* 533 F.2d 1387 (CA 6 1976) *cert. den.,* 431 U.S. 964, 97 S.Ct. 2919, 53 L.Ed.2d 1059 (1977). And where receipt of a firearm is alleged, it is sufficient if it is

---

**1.** With regard to Count 1, Defendant's requests do not contain the word "possessed," but in all other respects the requests are identical as to each count, varying only in terms of the identity of the particular firearm.

shown that the gun has at sometime moved in interstate commerce. *See, Id.; United States v. Day,* 476 F.2d 562 (CA 6 1973). The Government states that it has provided the Defendant with a certificate issued by the Bureau of Alcohol, Tobacco and Firearms showing that none of the weapons involved in this case was manufactured in the State of Michigan. This is a sufficient showing for prosecution under the statute. *Barrett v. United States,* 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1975); *United States v. Jones, supra.* Thus there can be no prejudice to the Defendant, nor surprise at the time of trial, since the Government has already made clear the manner in which it intends to prove this element of the offenses.

*6. The names and addresses of all participants in the alleged offense.*

*7. Names and addresses of all persons acting at the government's instance at the time of the alleged offense.*

*See* discussion under 1, above, p. 237 and on Defendant's Amended Demand for Discovery. (Section III, p. 234, above.) To the extent Defendant seeks information beyond the scope of the discovery ordered by the Court, the request is denied.

## V. MOTION TO SUPPRESS EVIDENCE AND/OR DISMISS

Defendant raises several separate grounds upon which he seeks the suppression of evidence or dismissal of all or part of the indictment. While some of Defendant's contentions may not be disposed of without first hearing evidence, other asserted grounds (identified in Defendant's motion as issues V through X) are ripe for decision at this time. The remaining issues will be disposed of following the evidentiary hearing set for September 20, 1983.

### Validity of the Search Warrant

■ Defendant argues that the search of his Hollywood Street residence pursuant to a search warrant, which resulted in the seizure of the firearms identified in Counts 4 through 6 of the indictment, was illegal because the affidavit upon which the search warrant issued was faulty. Defendant specifically argues that because the affidavit failed to indicate any nexus between the guns allegedly received and possessed by Defendant, and interstate commerce, the warrant did not issue on a proper showing of probable cause. Defendant seeks suppression of the firearms identified in Counts 4–6 for that reason.

The Government argues that the failure of the affidavit to address the question of interstate commerce does not require a finding that the warrant was issued without probable cause. I find *United States v. Sevier,* 539 F.2d 599 (CA 6 1976), dispositive. In that case, the Sixth Circuit held that there was probable cause for the issuance of a search warrant even though the affidavit did not show an interstate commerce nexus with the firearms. The court expressly rejected the application of *United States v. Brouillette,* 478 F.2d 1171 (CA 5 1973), an interstate prostitution case, to a prosecution for unlawful possession of firearms. The court stated that an affidavit need not include a prima facie showing of every element of a crime; it need only reflect that a federal crime has probably been committed. 539 F.2d at 603.

Defendant emphasizes the fact that in *Sevier* the court noted that it would be impossible to have known whether the guns had traveled in interstate commerce before inspecting the guns which were the object of the search. Defendant argues that his case is distinguishable because the Government had already obtained two guns from him which it could have inspected to determine their nexus with interstate commerce. However, as the Government observes, inspection of the guns already obtained from the Defendant would have had no real bearing on the interstate connection of any other guns which the agents sought under the search warrant. Such information, had it been included in the affidavit, would merely have shown the magistrate that there was already evidence that Defendant had once violated the law.

While it would have been better for the affidavit in this case to have included some statement with regard to the likelihood that the guns had a nexus with interstate commerce, it is not a fatal defect. *United States v. Sevier, supra.* The magistrate could reasonably have suspected that the weapon had traveled in interstate commerce. *See United States v. McShane,* 462 F.2d 5 (CA 9 1972).

### Pre-Arrest Delay

On October 11, 1982, Defendant allegedly sold a rifle and a shotgun to a Lansing police officer. That incident provides the basis for Counts 2 and 3 of the original indictment. Count 1 alleges receipt of a gun in October or November 1982. Counts 4 through 6 of the original indictment all allege receipt and possession on March 23, 1983. Defendant argues that the failure to arrest him within a short time after the October 11 incident subjected him to needless criminal liability and is such outrageous conduct on the part of the police and federal agents as to violate due process, as well as his right to a speedy trial. In his brief, Defendant contends that between October 1982 and March 1983, Lansing police officer Burgess contacted him on several occasions inquiring about the availability of firearms. Defendant reasons that if he had been arrested in October the other Counts as charged could not have been brought, and therefore the Government has perpetuated and fostered further criminal acts by its delay.

### 1. Due Process

While Defendant offers some authority for the proposition that outrageous law enforcement behavior may violate the due process clause and require reversal of the conviction, he can cite only one case in which the court actually held that such conduct "shocked the conscience" and thus violated due process. That case, *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) involved a clearly illegal entry into the defendant's house. The arresting officers then took defendant to the hospital to have his stomach pumped to retrieve the drugs he had swallowed. The circumstances of the present case do not rise to that level of indignity.

The Sixth Circuit has stated that it is reluctant to use its supervisory power over law enforcement by finding due process violations. *United States v. Norton,* 700 F.2d 1072 (CA 6 1983), *cert. den.,* —— U.S. ——, 103 S.Ct. 1885, 76 L.Ed.2d 814 (1983). Drawing upon an earlier decision, *United States v. Brown,* 635 F.2d 1207 (CA 6 1981), the *Norton* court outlined four criteria by which a due process claim might be judged:

> (1) the need for the conduct as shown by the type of criminal activity involved; (2) whether the criminal enterprise preexisted police involvement; (3) whether the government agent directs or controls the enterprise; and (4) the impact of the police activity on the commission of the crime. 700 F.2d at 1075.

In *Brown,* a defendant had argued that an agent's infiltration of a burglary ring violated due process. The court held that there was no due process violation, specifically finding that the use of the undercover agent in the operation "in no way increased the number of burglaries, or the likelihood of their success." 635 F.2d at 1213–1214. Notably, the court made this finding despite the fact that the agent had reported many burglaries to the FBI before arrests were made. In reviewing the problem of determining when an arrest should be effected, the court noted the dilemma faced by law enforcement officials:

> Law enforcement officials are often presented with a formidable problem when they become aware of the criminal activity of individuals who are involved in a large criminal enterprise. The alternatives presented to those officers are exceedingly poor. They may arrest known criminals, thus ceasing their particular harmful effect on society; or they may allow them to continue in their violation of the law with the hope that further investigation will reveal a greater number of those involved in the criminal enterprise, the exposure and arrest of whom may effectively eliminate a much broader

range and degree of criminal activity. *Id.* at 1214.

In *United States v. Rippy,* 606 F.2d 1150 (CA DC 1979), the court rejected defendant's due process argument where he had been convicted for three sales of heroin and one possession, the sales had been made at different times, and the first sale had been made seven months prior to his arrest. The court found that the delay was satisfactorily justified because the undercover agent was investigating other dealers at the time and needed to stay undercover. In addition, the court found no injury to the defendant as a result of the delay. The facts of this case and *United States v. Brown, supra,* indicate that a defendant may be prosecuted for crimes committed after his or her criminal activity is initially detected, without violating due process.

Thus Defendant's argument in this case does not appear to show the "special prejudice" required to attack a preindictment delay. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Moreover, prejudice to the Defendant alone is not sufficient to support a finding of a due process violation; the Court must also examine the reasons for the delay. *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Investigative grounds for delay are acceptable, *Id,* while a delay to gain a tactical advantage or to harass the Defendant are not. *United States v. Marion, supra.*

In this case, the mere fact that Defendant was arrested on a similar charge some four or five months after the state agents became aware of his criminal conduct, does not appear to be a violation of due process. Moreover, at this time it does not appear that Defendant is prejudiced beyond the fact that he faces an additional charge. Nor is there any evidence at this point that the Government delayed arrest and indictment for an improper purpose. For these reasons, Defendant's Motion to Dismiss on this ground will be denied at this time. However, denial will be without prejudice to a later showing by Defendant that the Government's purpose was improper and

that he has suffered some "special prejudice" due to this preindictment delay.

2. *Speedy Trial*

 Defendant argues that the delay prior to his arrest not only violated due process, but also his right to a speedy trial under the Sixth Amendment and the Speedy Trial Act. Preindictment delay will not be found to be a violation of a defendant's right to a speedy trial where defendant's right to a fair trial is not substantially prejudiced and where the delay was not an intentional device to gain a tactical advantage over the defendant or to harass the defendant. *United States v. Marion, supra.* The Defendant's right to a speedy trial under the Sixth Amendment runs from the time Defendant becomes an accused. *Id.* Similarly, Speedy Trial Act rights do not attach at the time the Government learns of the crime, but rather at the time of indictment or arrest. *United States v. Largent,* 545 F.2d 1039, 1042 (CA 6 1976), *cert. den.,* 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 546 (1976). This aspect of Defendant's motion is also denied, without prejudice to a renewal of the motion upon a showing of substantial prejudice to the Defendant.

*Hearsay Evidence before the Grand Jury*

This issue is discussed in connection with Defendant's Motion for Disclosure of Grand Jury Proceedings and/or Dismissal of the Indictment. (Section I, p. 229, *supra*). For the reasons set forth in that discussion, the Motion to Dismiss on this ground is denied.

*Venue*

 Defendant argues that "the Government has wholly failed to maintain its burden of establishing that the alleged offenses concerning Mr. Austin's receipt occurred within the district that this matter is being presented in as required by Federal Rule of Criminal Procedure 18." As the Government points out, this motion is necessarily premature, since there have been no proofs in this matter. The indictment alleges in each count that receipt and pos-

session occurred in the Southern Division of the Western District of Michigan. Dismissal of the indictment on this ground is therefore denied, without prejudice to renewal of the motion at a later time.

### Constitutionality of §§ 922(h)(1) and 1202(a)

██ In this portion of his motion, Defendant attacks the constitutionality of the statutes under which Defendant is charged, claiming that the application of the statutes in his case violates equal protection and due process. The Defendant indicated that he intends to brief this question in more detail at a later time, but has not done so. On the basis of the authorities submitted by Defendant and the Government, I find that this motion is without merit. Arguments similar to those outlined by Defendant have been rejected by other courts. *See Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1979); and *United States v. Giles,* 640 F.2d 621 (CA 5 Unit A, 1981).

More importantly, in *United States v. Craven,* 478 F.2d 1329 (1973), *cert. den.,* 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed. 85 (1973), the Sixth Circuit held that a fundamental right is not involved in a case under 18 U.S.C. § 922(h)(1), rejecting an equal protection argument of a defendant who had been convicted under that portion of the statute prohibiting receipt of guns by persons under indictment for a felony. The Sixth Circuit stated:

> It was eminently reasonable for Congress to conclude that the indictment of an individual for a crime punishable by imprisonment for a term exceeding one year is so often indicative of a propensity for violence that the indictment classification of 18 U.S.C. § 922(h)(1) was justified in the public interest. 478 F.2d at 1339.

I find this case dispositive of the issue raised by Defendant, at least to the extent of the facts before the Court at this time. However, because Defendant apparently intends to present the Court with further information on this question at a later time, denial is without prejudice.

### ORDER

In accordance with the Opinion issued in the above captioned case dated September 15, 1983;

IT IS HEREBY ORDERED:

1. Defendant's Motion for Disclosure of Grand Jury Proceedings and/or Dismissal of the Indictment is DENIED insofar as it rests on the use of hearsay before the grand jury; disclosure of grand jury proceedings for pretrial preparation purposes is DENIED without prejudice;

2. Defendant's Motion to Dismiss and/or Merge the Counts of the Indictment is DENIED as to Defendant's argument that the indictment is duplicitous; the motion to merge Counts 2 and 3, and Counts 4 through 6, into two counts, on the grounds that as now framed the indictment is multiplicitous, is GRANTED;

3. Defendant's Amended Demand for Discovery and Inspection is GRANTED in part and DENIED in part, as follows:

a. The Government is to provide the Defendant with the substance of any oral statement which it intends to offer in evidence at trial, made by the Defendant after arrest, if it has not already done so;

b. Discovery request number 9 is DENIED, except to the extent the information requested falls within the exceptions to Rule 16(a)(2), and to the extent disclosure of the information at trial is provided for under 18 U.S.C. § 3500;

c. Discovery request number 7:

i. Request 7(a). The Government is Ordered to disclose to the Defendant the names and addresses of the witnesses it intends to call at trial, such list to be provided to the Defendant no later than three working days prior to trial. Defendant's request for disclosure of any criminal records of such witnesses, is DENIED, without prejudice;

ii. Request 7(b) is DENIED, except with regard to any exculpatory statements, and Defendant's own statements, and denial is without prejudice to a renewal of the motion during trial;

iii. Request 7(c) is DENIED, in light of the Government's compliance;

iv. Request 7(d) is DENIED, without prejudice to renewal at a later time;

4. Defendant's Motion for a Bill of Particulars is DENIED, except insofar as certain of the information requested has been Ordered to be disclosed pursuant to Defendant's Amended Demand for Discovery;

5. Defendant's Motion to Suppress Evidence and/or Dismiss on the grounds that the search warrant was not based upon a showing of probable cause, is DENIED;

6. Defendant's Motion for Dismissal due to preindictment delay is DENIED without prejudice to renewal at a later time;

7. Defendant's Motion for Dismissal due to the alleged use of hearsay before the grand jury, is DENIED;

8. Defendant's Motion for Dismissal on venue grounds, is DENIED, without prejudice;

9. Defendant's Motion for Dismissal on the grounds that 18 U.S.C. § 922(h)(1) and 18 U.S.C.App. § 1202(a) are unconstitutional as applied to him, is DENIED without prejudice.

IT IS FURTHER ORDERED that the grand jury transcripts supplied to the Court by the Government shall be filed under seal.

